UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JACK HUBMANN,

    Plaintiff,

v.                                   CASE NO.: 4:09-cv-390-SPM/WCS

MORRIS A. YOUNG,

    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant's Motion for Summary Judgment (doc. 14), pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Defendant also filed a statement of facts (doc. 15) and exhibits (doc. 16) in support thereof. Plaintiff filed a response and memorandum of law (doc. 18), a statement of material facts (doc. 19), and exhibits thereto (doc. 20) in opposition to Defendant's motion. For the reasons set forth below, the Court grants the Motion for Summary Judgment in part, and denies in part.

## Background

Plaintiff has brought this action alleging employment discrimination and retaliation under the Americans with Disabilities Act. Plaintiff has withdrawn his race discrimination claim. (Doc. 18, p. 2)

1

Plaintiff has been an employee of the Gadsden County Sheriff's Office, where Defendant is presently Sheriff, off and on since 1995. Plaintiff began his employment with the Defendant in January of 2005. Throughout the time of Plaintiff's employment with the Defendant, Plaintiff has exhibited attendance problems, and has been counseled more than once about his absences.

In 2008, Plaintiff became employed by the Defendant as a patrol deputy. Plaintiff acknowledges that prior to May 2008, Plaintiff accrued more absences than would normally be approved. An investigation of Plaintiff's absences was conducted by the Office of Internal Affairs. It was determined that from April 1, 2007, through May 5, 2008, Plaintiff had missed 52 workdays, taken off sick 468.5 hours, and accumulated 163.75 hours of unpaid leave. (Doc. 20, exh. 9). The investigative report also criticized Plaintiff for not always checking in with his supervisor before taking days off, as is required by agency policy. Pursuant to the investigative report, on May 29, 2008, Defendant sanctioned Plaintiff with eight days of suspension without pay, and one year of disciplinary probation. Plaintiff requested a Predetermination Conference to challenge the Defendant's punishment. On June 11, 2008, the Predetermination Conference Board decided that the Plaintiff's disciplinary probation period should be reduced from one year to six months.

While on disciplinary probation, Plaintiff called in sick two consecutive days the following month, July 14 and 15, 2008. The reasons given by Plaintiff for the absences were that he had not had any sleep and suffered from migraines. Additionally, on July 18, 2008, Plaintiff requested that he be allowed to work the day shift instead of the 3:00

p.m. to 3:00 a.m. shift, because of family hardship, an unspecified medical condition, and to accommodate his doctor's appointments. (Doc. 20, exh. 17). Plaintiff was placed on administrative leave July 18, 19, and 20, 2008, and directed to provide a doctor's excuse prior to his return. On July 21, 2008, Plaintiff returned to work with a medical clearance from Doctor Fredrick Lutz stating that Plaintiff was "'fit for full unrestricted law enforcement duties.'" (Doc. 20, exh. 24). Plaintiff was moved to the day shift on August 11, 2008.

Plaintiff again called in sick on August 6 and August 7, 2008. Reasons given were that he was sick and that his wife was taking him to two doctors. A second internal affairs investigation of Plaintiff was initiated on August 14, 2008. Plaintiff reported in an interview conducted during the second investigation that he had taken off work in July and August because he was suffering side effects from sleep apnea and had been unable to sleep. Plaintiff also reported that after a doctor's appointment on August 7, 2008, he had received a machine to help him sleep. Pursuant to the second investigative report, on August 27, 2008, the Defendant proposed that the Plaintiff's employment be terminated. (Doc. 20, exh. 25).

A second Predetermination Conference was conducted on September 2, 2008. The Plaintiff admitted his excessive absences, but attributed them to sleep apnea, which had been diagnosed by a specialist in June 2008. The Predetermination Conference Board concluded that if the Plaintiff did in fact suffer from a serious medical condition, his employer should have been so notified in June, when he was properly diagnosed. Accordingly, the Board affirmed the proposed discipline of termination.

On September 2, 2008, Plaintiff filed an employment discrimination charge with the Florida Commission on Human Relations. After receiving notice of his termination on or about September 2 or 3, 2008, Plaintiff scheduled a meeting with Defendant for September 4, 2008. Plaintiff reports that during the meeting he requested his job back, and that the Defendant responded that he would not have been fired had he not filed the discrimination charge. Plaintiff states that he never told Defendant about the charge of discrimination, although he did discuss it with another co-worker.

**Standard for Summary Judgment**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists if the record, taken as a whole, could reasonably provide a basis for a rational juror to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of proving that no genuine issue exists lies on party moving for summary judgment. Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000).

Once the moving party has satisfied its burden, the burden shifts to the nonmoving party to provide evidence of a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must indicate "specific facts" in the record that prove a genuine issue that requires adjudication by a jury. Owen v, Wille, 117 F.3d 1235, 1236 (11th Cir. 1997). A mere "scintilla" of evidence will

not suffice to demonstrate "more than a metaphysical doubt" regarding the material facts of the record. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In particular, this requires "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file.'" Id (quoting Celotex, 477 U.S. at 324).

When evaluating a motion for summary judgment, a court should construe the evidence and any related factual inferences in a light most favorable to the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). A court should also resolve any discrepancy between the parties' factual allegations in favor of the nonmoving party. Id. In sum, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251.

**Standard for Disability Discrimination Claims**

Under the ADA, an employer is liable for discriminating against a qualified individual on the basis of her disability. 42 U.S.C. § 12112(a). This includes disability discrimination in connection with the hiring, training, compensation, promotion, and termination of employees. Id.

A plaintiff asserting a disability discrimination claim under the ADA must demonstrate that "she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000). A Plaintiff is considered disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such

5

individual; (B) [there is] a record of such impairment; or, (C) [she is] regarded as having such impairment." 42 U.S.C. § 12102(2).

The analysis of ADA claims based on circumstantial evidence follows the McDonnell-Douglas burden-shifting framework. See Raytheon v. Hernandez, 540 U.S. 44 (2003). "The plaintiff must first show that she established a prima facie case of [discrimination]. The employer then puts forth a legitimate, non-[discrimin]atory reason for its decision. The burden then shifts back to the plaintiff to show that the reason given was a pretext for [discrimination]." Dickey v. Dollar General Corp., 351 F. App'x 389, 392 n.4 (11th. Cir. 2009).

**Discussion**

Plaintiff has failed to establish a prima facie case of discrimination. The basis of Plaintiff's complaint is an "actual or perceived learning disability[.]" (Complaint, p. 1). However, both the Motion for Summary Judgment and the Plaintiff's Response thereto assert sleep apnea as the basis for the Plaintiff's disability discrimination claim, in that Plaintiff claims that sleep apnea substantially limited his major life activities of sleeping and working.

When determining whether an impairment substantially limits a major life activity, courts should consider (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). An impairment is substantially limiting if it renders a person "(i)[u]nable to perform a major life activity that the average person in the general population can

perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

Plaintiff's claim of sleep apnea fails to establish a prima facie case of a disability because his assertions of an inability to sleep are conclusory, not descriptive as to the impact, severity, or duration of the inability to sleep, reveal no more than an occasional or recurring sleeping problem, and afford no means of comparison of the Plaintiff's inability to sleep relative to the inability to sleep of the average person in the general population. See Heisler v. Metro. Council, 339 F.3d 622, 628 (8th Cir. 2003) ("The record does not reveal the severity of her sleep apnea or whether her sleeping has improved with medication."); Rossbach v. City of Miami, 371 F.3d 1354, (11th Cir. 2004) ("[C]ourts have consistently held that someone who walks, sits, stands or sleeps 'moderately below average' is not disabled under the Act."); Pouliot v. Town of Fairfield, 226 F.Supp.2d 233, 243 (D. Me. 2002) ("As many individuals find it difficult to sleep, P[laintiff] must show that his 'lack of sleep was worse than the quality of sleep of the general population.'") (quoting E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001)); Matya v. Dexter Corp., 2006 WL 931870, (W.D.N.Y. 2006) ("It has been recognized that difficulty sleeping is a common problem, and the mere allegation that plaintiff had difficulty sleeping is not sufficient to show a substantial limitation in the major life activity of sleeping."); Hill v. Metro. Atlanta Rapid Transit Auth., 77 F.Supp.2d 1291, 1296 (N.D. Ga. 1999) ("[S]he has failed to demonstrate how her impairments

significantly restricted her ability to perform any aspect of her job. No medical evidence was presented showing any kind of a link between her impairments and tardiness.").

Additionally, "'[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.'" Greenberg v. BellSouth Telecomm., Inc., 498 F.3d 1258, 1264 (11th Cir. 2007) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 482-83 (1999)). Plaintiff "cannot maintain a claim of ADA discrimination if she was not disabled at the time of the alleged discriminatory act." Diaz v. Transatlantic Bank, 367 F. App'x 93, 98 (11th Cir. 2010). The record reveals that after his diagnosis in June 2008 and prior to his termination, Plaintiff was treating his sleep apnea by adjusting his sleeping patterns and by the use of a machine to facilitate his sleep. Plaintiff was not disabled during his employment of these measures, to the extent that they corrected or ameliorated the symptoms of his sleep apnea.

"'When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'" Id. (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)). In the present case, Plaintiff has made no such showing. Plaintiff concedes that working a daytime shift has helped him achieve a more regular sleeping pattern and allowed him to sleep better. Accordingly, despite his sleep apnea, Plaintiff would be able to hold a variety of jobs with a daytime shift, or which accommodated his sleep schedule. In sum, Plaintiff's sleep apnea does not substantially limit his ability to work.

Moreover, Plaintiff has made no showing that he was perceived as disabled by the Defendant. Indeed, the record, including Plaintiff's affidavit, appears to prove that his employer perceived just the opposite, that Plaintiff abused the leave policies by claiming sick leave when he was not actually sick or disabled. In the investigative reports, the Internal Affairs investigator seems skeptical of the various reasons the Plaintiff gave for his excessive absences, most of which were unrelated to sleep apnea, including family problems, the flu, a stomach virus, heart problems, and falling in the shower. In both his interview with the Internal Affairs investigator and his affidavit, Plaintiff stresses that he never faked an illness as a basis for sick leave, apparently because this was insinuated by his employer. Additionally, Plaintiff was charged administratively with Misuse of Sick Leave, for violating a general order that "[e]mployees shall not feign illness or injury, or falsely report themselves, or a co-worker, ill or injured[.]" (Doc. 20, exh. 24). The second Recommendation of the Predetermination Conference Board, which recommended Plaintiff's termination, announced the Board's belief that if the Plaintiff truly suffered from a serious medical condition, he would have advised them as such prior to having been placed on disciplinary probation. There is not even a scintilla of evidence in the record to the support the Plaintiff's allegation that the Defendant perceived him to have a disability.

Lastly, even if it is presumed that the Plaintiff has established a prima facie case of disability discrimination, summary judgment in favor of the Defendant is still appropriate because the Plaintiff has not presented sufficient evidence to overcome the Defendant's legitimate, non-discriminatory reason for his termination, that he had

9

accrued excessive absences over the course of his employment with the Defendant. As expressed above, Plaintiff had accrued numerous absences, which the Plaintiff concedes were in excess of what would normally be approved, even after exhausting his leave time. In essence, Plaintiff frequently failed to work. The termination of an employee for excessive absences is a legitimate business reason unrelated to his alleged disability.

Plaintiff argues that Defendant had a duty to accommodate him by not firing him for his prior excessive absences once he became aware that the Plaintiff suffered from sleep apnea. "'[N]o employer is required to ignore the . . . patently unacceptable behavior of its employees simply because that employee has a disability. An employee may not 'boostrap his disease into the line of causation,' . . . by showing that the misconduct relied on by the employer would not have occurred 'but for' the disability.'" West v. Town of Jupiter Island, 146 F.Supp.2d 1293, 1299 (S.D. Fla. 2000) (quoting Brohm v. JH Properties, Inc., 947 F.Supp. 299, 302 (W.D. Ky. 1996)). "While 'reasonable accommodations' may include job restructuring and part-time or modified work schedules, see 29 C.F.R. § 1630.2(o)(2)(ii), an employer is not required to fundamentally alter its program or endure undue hardship." Russo v. Jefferson Parish Water Dept., 1997 WL 695602, 3 (E.D. La. 1997). A reasonable accommodation is generally prospective in relief. However, Plaintiff had been accumulating excessive absences for years prior to notifying Defendant that he suffered from sleep apnea, and Defendant was under no obligation to ignore the Plaintiff's record of absenteeism on the basis of this announcement.

Moreover, Plaintiff has offered no evidence tending to prove that the Defendant's legitimate, nondiscriminatory reason for his termination is pretext for disability discrimination. Plaintiff "must show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" <u>Bass v. Lockheed Martin Corp.</u>, 287 F. App'x 808, 812 (11th Cir. 2008) (quoting <u>Texas Dept. of Comty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)). There is nothing in the record to show that Plaintiff's termination was based on anything more than his excessive absences, even after exhausting his leave and being placed on disciplinary probation, and instead to show that the true reason was discrimination based on the Plaintiff's disability, actual or perceived. Accordingly, the Plaintiff's disability discrimination claim is so one-sided that the Defendant must prevail as a matter of law.

**Retaliation**

Summary judgment will be denied as to the Plaintiff's remaining retaliation claim, as the Plaintiff has established a prima facie case of retaliation and there is a genuine issue of material fact as to whether the Defendant's proffered reason for Plaintiff's termination is pretext for retaliation. The Americans with Disabilities Act anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. "To establish a prima facie case of retaliation a plaintiff must show that: (1) she

engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was some causal relationship between the two events." Burgos v. Chertoff, 274 F. App'x 839, 843 (11th Cir. 2008). Although the Court has found that the Defendant is entitled to summary judgment as to the Plaintiff's disability discrimination claim, Plaintiff's retaliation claim may still survive summary judgment if it satisfies the above standards. See id.

Plaintiff filed his charge of disability discrimination on September 2, 2008. In his affidavit, Plaintiff alleges that he had a meeting with the Defendant on September 4, 2008, during which the Defendant told Plaintiff that he would not have been terminated had he not filed the charge of discrimination. The Defendant's Notice of Proposed Discipline, which recommended that Plaintiff be terminated, is dated August 26, 2008, and signed August 27, 2008, but proposes that the disciplinary action become effective September 3, 2008. The Predetermination Conference Board Recommendation that the Plaintiff be terminated is dated September 2, 2008, and signed by the Defendant September 3, 2008. Therefore, Defendant could have discovered that the Plaintiff had filed an employment discrimination charge prior to the time that the Plaintiff's termination became final. The veracity of the Plaintiff's account of the September 4, 2008, meeting is a material question of fact best left for the jury. Therefore, summary judgment as to the Plaintiff's retaliation claim will be denied.

Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (doc. 14) is GRANTED as to the Plaintiff's disability discrimination claim and DENIED as to the Plaintiff's retaliation claim.

DONE AND ORDERED this <u>twenty-second</u> day of September, 2010.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge